Filed 11/18/20  P. v. Rodriguez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ANDREW RODRIGUEZ,<br><br>    Defendant and Appellant. | B301144<br><br>(Los Angeles County<br>Super. Ct. No. KA111372) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez and David C. Brougham, Judges.  Affirmed.

Carlos Ramirez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This is the third appeal brought by defendant Robert Andrew Rodriguez following his convictions for first degree burglary and criminal threats. In this appeal, he relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) to raise a due process challenge to the trial court's imposition of a restitution fine and certain assessments. We conclude *Dueñas* is distinguishable from and inapplicable to the instant case. Alternatively, even if this case were not distinguishable from *Dueñas*, this division has held that *Dueñas* was wrongly decided. Accordingly, we affirm.

## FACTUAL BACKGROUND

The following facts are taken from our opinion in defendant's first appeal, *People v. Rodriguez* (May 24, 2018, B281282) [nonpub. opn.] (*Rodriguez I*).

On the evening of December 14, 2015, defendant climbed through a downstairs window into the home of Masae Hayashi and her husband Michiaki Ishimura. Defendant went upstairs and entered a bedroom occupied by Hayashi and her 17-year-old daughter Yuri. After opening the closet door and looking around for a few seconds, defendant told Yuri to leave and ordered Hayashi to remove her clothes. Hayashi and Yuri refused to comply. Defendant then told Hayashi to accompany him downstairs, and said he would kill her if she did not take off her clothes.

Hayashi, followed by defendant, went out to the hallway and yelled for her son and husband. Hayashi's son came out of his bedroom and Ishimura came upstairs. When Ishimura asked who defendant was, defendant claimed to be an FBI agent, but refused to show any identification. Defendant asked for legal documents related to the house, and warned that he had five men

2

outside ready to come in at his request. Ishimura went downstairs, looked outside, then returned and said he saw no one and would be calling the police. Defendant left the house.

## PROCEDURAL BACKGROUND

An information charged defendant with attempted forcible rape, first degree burglary, criminal threats, and impersonating a public officer, and alleged that defendant had suffered two prior strike convictions, two prior serious felony convictions, and four prior prison terms. A jury convicted defendant of the burglary and criminal threats counts, but could not reach a verdict on the other counts, which the trial court dismissed at the prosecution's request. Defendant admitted to the prior conviction allegations.

The trial court sentenced defendant to 35 years to life, consisting of 25 years to life for the burglary count, a concurrent 25-years-to-life sentence for the criminal threats count, and two 5-year enhancements for the two prior serious felony convictions under Penal Code[1] section 667, subdivision (a)(1). The court struck the four prior prison terms.

The trial court imposed a $300 restitution fine under section 1202.4, subdivision (b), an $80 court security fee under section 1465.8, and a $60 criminal conviction assessment under Government Code section 70373.

Defendant appealed, and we affirmed the judgment in full. (*Rodriguez I*, *supra*, B281282.)

After sentencing, in response to inquiries from the California Department of Corrections and Rehabilitation, the trial court reduced the number of presentence conduct credits it

---

[1] Unspecified statutory citations are to the Penal Code.

3

had awarded. Defendant appealed the reduction in credits and we affirmed. At the direction of the Supreme Court, however, we remanded for the trial court to exercise its newly enacted discretion pursuant to section 1385 whether to strike one or both five-year prior serious felony enhancements. (*People v. Rodriguez* (Apr. 15, 2019, B285593) [nonpub. opn.].)

On remand, the trial court declined to exercise its discretion to strike the five-year enhancements and left its previously imposed sentence in place. Defendant filed a notice of appeal. Subsequently, defendant filed a motion in the trial court "to vacate fines and fees and stay restitution fine or order an ability to pay hearing," which the trial court denied.[2]

## DISCUSSION

On appeal, defendant argues, pursuant to *Dueñas*, *supra*, 30 Cal.App.5th 1157, that the trial court violated his due process rights by imposing the $300 restitution fine, $80 court security fee, and $60 criminal conviction assessment without first determining that he was able to pay those costs. He contends that on this record we should conclude that further proceedings

---

[2] When the "sole issue on appeal" is "the erroneous imposition or calculation of fines [or] penalty assessments," the appellant must "first present[ ] the claim in the trial court," either "at the time of sentencing, or if the error is not discovered until after sentencing," through a "motion for correction in the trial court, which may be made informally in writing." (§ 1237.2; see *People v. Hall* (2019) 39 Cal.App.5th 502, 504 [dismissing *Dueñas* challenge when appellant did not first seek relief under section 1237.2].) The trial court retains jurisdiction to correct the error, despite the filing of the notice of appeal. (§ 1237.2.)

4

to determine his ability to pay are needless, and we should simply reverse the imposition of the fine and fees. We disagree.

In *Dueñas*, an unemployed, homeless mother with cerebral palsy lost her driver's license when she was unable to pay over $1,000 assessed against her for three juvenile citations. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160–1161.) Thereafter she received multiple convictions related to driving with a suspended license, each accompanied by jail time and additional fees she could not afford to pay. (*Id*. at p. 1161.) The trial court rejected Dueñas's request to hold an ability to pay hearing despite undisputed evidence that she was indigent. (*Id*. at p. 1163.)

The appellate court reversed, holding that due process prohibited imposing the same assessments imposed in the instant case and required the trial court to stay execution of the restitution fine until the trial court held an ability to pay hearing. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) The court expressed concern for "the cascading consequences of imposing fines and assessments that a defendant cannot pay," noting that Dueñas's case " 'doesn't stem from one case for which she's not capable of paying the fines and fees,' but from a series of criminal proceedings driven by, and contributing to, Dueñas's poverty." (*Id*. at pp. 1163–1164.) The court referenced "the counterproductive nature of this system and its tendency to enmesh indigent defendants in a cycle of repeated violations and escalating debt." (*Id*. at p. 1164, fn. 1.)

In *People v. Caceres* (2019) 39 Cal.App.5th 917 (*Caceres*), we declined to apply *Dueñas* beyond its "extreme facts." (*Id*. at p. 923.) We thus rejected a *Dueñas* challenge brought by a defendant convicted of criminal threats, concluding that offense "on its face is not a crime either 'driven by' poverty or likely to

'contribut[e] to' that poverty such that an offender is trapped in a 'cycle of repeated violations and escalating debt.' [Citation.] A person may avoid making criminal threats regardless of his or her financial circumstances, and the imposition of $370 in fees and fines will not impede [the defendant]'s ability to avoid making criminal threats in the future." (*Caceres*, at pp. 928–929.)

Here, as in *Caceres*, defendant's offenses—breaking into an occupied home and threatening to kill a resident if she did not remove her clothes—are not crimes likely to trap him "in a 'cycle of repeated violations and escalating debt,' " particularly when he may abstain from committing those offenses in the future regardless of his financial circumstances. (*Caceres*, *supra*, 39 Cal.App.5th at pp. 928–929.) *Dueñas* is therefore inapplicable to the facts of this case and does not provide a basis to challenge the imposition of the restitution fine and assessments.

As an alternative ground, even if the facts of the instant case were analogous to those of *Dueñas*, following *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted November 26, 2019, S258946, this division has held *Dueñas* was wrongly decided because it misapplied due process precedents. (*People v. Kingston* (2019) 41 Cal.App.5th 272.) Defendant does not discuss *Caceres*, *Hicks*, or *Kingston* in his appellate briefing, and therefore gives us no cause to deviate from those precedents.

## DISPOSITION

The judgment is affirmed.
<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.